**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | NO. CR-13-00040-001-HE |
| | ) | NO. CIV-14-0707-HE |
| JESSICA PILLOW VENABLE, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

Defendant Jessica Pillow Venable pleaded guilty to two counts of tax evasion in violation of 26 U.S.C. § 7201 and was sentenced to twenty-four months imprisonment. She did not appeal, but now seeks habeas relief pursuant to 28 U.S.C. § 2255.

Defendant asserts four grounds for relief in her habeas motion. In ground one she claims her guilty plea was involuntary.[1] In ground two she contends there were unauthorized corrections on her petition to enter plea of guilty, that she was not advised that she was required to pay restitution, and that she was not informed after sentencing of the full amount of restitution and tax penalties that she was required to pay. Defendant asserts ineffective assistance of counsel in ground three and that her confession was coerced in ground four.

Background

Defendant embezzled more than $700,000 dollars from her former employer, Dream Machines of Texas ("DMOT"), in 2009 and 2010, by issuing DMOT checks made payable

---

[1]*Although defendant states in ground one of her motion, "[a]t sentencing I was asked to answer . . .," Doc. #20, p. 4, it is clear she is referring to her change of plea hearing. Page references for briefs and exhibits are to the CM/ECF document and page number.*

to her husband. She deposited the checks into an account in her husband's name to which she had access. Doc. #10, ¶10. Using accounting software, defendant altered DMOT records and was able to avoid detection, despite a monthly audit. *Id.* at ¶¶ 10, 88. Defendant prepared and filed her tax returns for 2009 and 2010, but did not report the embezzled money as income.

## Analysis

Because "a § 2255 motion is not intended as a substitute for an appeal . . . failure to raise an issue either at trial or on direct appeal imposes a procedural bar to habeas review." United States v. Cervini, 379 F.3d 987, 990 (10th Cir. 2004) (internal quotation marks omitted). A defendant may, however, avoid application of the procedural bar if she can show "both good cause for failing to raise the issue earlier, and that the court's failure to consider the claim would result in actual prejudice to [her] defense." *Id.* Alternatively, despite the procedural bar, the court may reach the merits of the constitutional claims, if the "defendant can demonstrate that 'failure to consider the federal claims will result in a fundamental miscarriage of justice.'" *Id.* (quoting Coleman v. Thompson, 501 U.S. 722, 750 (1991)).

Defendant pleaded guilty. She did not raise her claims of constitutional error either at trial or on direct appeal from her sentence. Her claims therefore are subject to a procedural bar, with the exception of her ineffective assistance of counsel claim. Massaro v. United States, 538 U.S. 500, 509 (2003) ("failure to raise an ineffective-assistance-of-counsel claim on direct appeal does not bar the claim from being brought in a later, appropriate proceeding under § 2255"). The court will consider defendant's ineffective assistance claim first, as it

is the crux of her habeas motion.

Ground Three

In ground three defendant claims her counsel was ineffective in that counsel allowed her to plead guilty when she did not possess the required intent at the time she committed the crime of tax evasion. Specifically, defendant alleges that she "did in fact not know taxes had to be paid on embezzled income." Doc. #20, p. 7. Defendant also asserts that her attorney improperly allowed the losses associated with her 2011 taxes to be considered as relevant conduct in calculating her offense level.

To succeed on an ineffective assistance of counsel claim a defendant "must show both that [her] counsel's performance 'fell below an objective standard of reasonableness' *and* that 'the deficient performance prejudiced the defense.'" Byrd v. Workman, 645 F.3d 1159, 1167 (10th Cir. 2011) (quoting Strickland v. Washington, 466 U.S. 668, 687–88 (1984)). To establish prejudice a defendant "must establish that there is a reasonable probability that, but for counsel's error, the result of the proceeding would have been different." *Id.* at 1168 (internal quotation marks omitted). Courts can "address these two prongs in any order, and failure under either is dispositive." *Id.*

Defendant's ineffective assistance claim, insofar as it is based on her plea, fails because she has not shown that her attorney erred in having her plead guilty.[2] While

---

[2]*To establish that her plea was involuntary and her counsel's performance was constitutionally deficient, defendant has to "(1) show that the [intent] element was a critical element of [the charge]; (2) overcome the presumption that [her] attorney explained this element to [her] at some other time prior to [her] guilty plea; and (3) demonstrate that, prior to [her] guilty plea, [she] did not receive notice of this element from any other source." United States v. Weeks, 653*

3

defendant contends in her § 2255 motion that she was unaware that she had to pay taxes on embezzled funds, her assertion conflicts with the acknowledgments she made in the petition to enter plea of guilty, her signed confession and with statements she made under oath during her change of plea hearing.

In the petition to enter plea of guilty, defendant stated that she filed tax returns that did not accurately reflect her income for 2009 and 2010, that she was voluntarily pleading guilty and that she was pleading guilty because she was guilty. Doc. #7. She also had previously confessed that she had "not paid any federal income taxes on the money [she] embezzled from DMOT, even though [she] [knew] that the embezzled income [she] received from DMOT [was] taxable to [her]." Doc. #26-4, p. 1.[3]

During the change of plea hearing defendant initially hesitated, when asked whether she knew that the money she had embezzled was taxable income.[4] The court continued the

---

*F.3d 1188, 1201 (10th Cir. 2011). While the first requirement is undisputed, defendant failed to demonstrate the third.*

[3]*Defendant contends in her habeas motion that the confession was coerced. She does not assert that she was forced to make the statement, but instead states that she "feel[s] like [she] was misguided by the Agent and he allowed [her] to sign a confession knowing that [she] had no carnal knowledge taxes would need to be paid on ill gotten gains." Doc. #20, p. 8. While her assertion might be enough to demonstrate that her affidavit was executed unknowingly, it is not enough to demonstrate that it was executed involuntarily, particularly when it included the following: "Although this statement was prepared by Special Agent Kyle Pacatte of the Internal Revenue Service Criminal Investigation Division, it is my voluntary statement. I consulted with my attorney, who reviewed this statement, before I swore it is true and accurate, signed it, and gave it to Special Agent Pacatte." Doc. #26-4, p. 1.*

[4]*Defendant's responses were equivocal. She stated that she "didn't know what the law or the rules were on illegally gained money" but also said "I do know that any income I actually received I should have filed taxes on." Doc. #26-2, pp. 14, 16.*

4

hearing because of concern whether defendant knew at the time that she failed to report the income that she owed taxes on it. After a recess, during which defendant conferred with her attorney, Marna Franklin, the court and defendant engaged in the following exchange:

> The Court: And what was your understanding at that point about what you were supposed to do with the embezzled – as to the embezzled money in your tax returns?
>
> Defendant: I knew that at the time that any income that I received should have been reported on my taxes.
>
> The Court: Now, you seemed hesitant about that when we were talking here an hour or two ago about that. What was your -- have you changed your mind or --
>
> Defendant: Well, in lieu of this case, I've done quite a bit of research on it and I -- I now know that there are different things that I could have done differently. I just -- I did know that it was an income and it should have been reported.
>
> The Court: Well, I guess that's -- I mean, you've apparently learned a lot of things since then about the various details of reporting taxes. But my question is, did you know then that you were supposed to do something about the embezzled money if you were going to comply with the tax laws?
>
> Defendant: Yes, Your Honor.

Doc. #26-2, pp. 18-19. Then, in response to questions from the prosecutor, defendant admitted that she embezzled money from her employer in both calendar years 2009 and 2010, but on the tax returns she filed with the Internal Revenue Service ("IRS") she only reported the income she had legitimately earned that was identified on her W-2 forms. She did not include the income that she had embezzled. When asked if she knew, when she filed the tax returns, if the money she had embezzled was taxable income, defendant stated "Yes."

5

When asked if she knew that she was required to report that money on her tax returns, defendant again said "Yes." Defendant further admitted that if she had included the embezzled money as taxable income on her tax returns it would have resulted in a substantial tax liability owed to the IRS and that she intentionally omitted including that income to avoid having to pay taxes on it. *Id.* at 19-22.

After again asking defendant if she had committed the crime she was charged with and being told by defendant "Yes, Your Honor, I did," and after being told by both defendant and her attorney that neither of them knew of any reason why he should be hesitant to accept defendant's guilty plea, the court stated:

> I've considered very carefully your responses here, particularly in the last few minutes, in light of the questioning that had preceded the break, because it is important that the elements of the offense be here if I'm going to let you plead guilty to it, and it does appear to me that upon the further clarification that you made here that you did have the necessary knowledge that there were tax requirements. So it does appear to me that the necessary elements of the offense have been made out and that there's a factual basis for the plea. So I will accept your plea of guilty . . . and will, therefore, find you guilty as charged.

*Id.* at 23-24.[5]

"Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."

---

[5]*At the end of the hearing, after the court had accepted defendant's plea, the government sought leave to incorporate into the record the affidavit/confession defendant had signed on March 17, 2012. Doc. #26-2, pp. 26-27.*

United States v. Weeks, 653 F.3d 1188, 1205 (10th Cir. 2011) (quoting Blackledge v. Allison, 431 U.S. 63, 74 (1977)). A defendant who "has made an affirmation of voluntariness and has pled guilty . . . carries a heavy burden in subsequently claiming that his plea was involuntary." United States v. Wright, 43 F.3d 491, 497 (10th Cir. 1994) (internal quotation marks omitted). Nevertheless, the Tenth Circuit has recognized that "such statements do not stand as an absolute bar to post-conviction relief . . . [because a defendant] may still claim that [her] representations at the time [her] guilty plea was accepted were so much the product of ... misunderstanding, duress, or misrepresentation that they rendered [her] guilty plea a constitutionally inadequate basis for imprisonment." *Id.* (internal citation and quotation marks omitted). Here, however, defendant has not presented anything in her habeas motion other than general statements such as she "was not aware that there was a difference between willingly committing the crime and not knowing there was a crime being committed." Doc. #20, p. 5.[6] Such conclusory assertions are insufficient to contradict earlier

---

[6]*Defendant states in her motion that her attorney told her that if she "did not go back in the court and say [she] willingly did it they would arrest [her] and take [her] back to Dallas County to fight the case." Doc. #20, p. 6. Defense counsel gave a similar, but slightly different version of their conversation: "At no time did I threaten Ms. Pillow with arrest if she did not plea, but [I] very well may have reminded her that the transfer of the case to the Western District was for plea purposes and if she wished to proceed to trial, the case would be transferred back to the Northern District of Texas." Doc. #26-1, pp. 3-4. Immediately after the recess discussion with Ms. Franklin, defendant told the court that she was "[a]bsolutely" satisfied with the services of her attorney and that she knew of no reason why he should be hesitant to accept her guilty plea at that point. Doc. #26-2, pp. 22, 23. To the extent defendant may now be claiming she pleaded guilty because she was threatened, due to the "absence of a believable, valid reason justifying a departure from the apparent truth of [defendant's] Rule 11 statements," the "truth and accuracy" of her statements during the change of plea hearing will be "regarded as conclusive." Weeks, 653 F.3d at 1205 (internal quotation marks omitted); see United States v. Carr, 80 F.3d 413, 417 (10th Cir.1996) (court rejected defendant's assertion that his attorney, together with his codefendants and their*

7

statements made under oath. *See* Weeks, 653 F3d. at 1205.

The court concludes defendant has failed to demonstrate she lacked the intent required for her convictions for tax evasion. She has therefore not met her burden of showing that her attorney performed deficiently by allowing her to plead guilty.[7]

Defendant's assertion that her attorney's performance was objectively unreasonable because Ms. Franklin allowed her sentencing range to be calculated based on relevant conduct that included tax losses attributable to her 2011 tax return is similarly unavailing. Defendant contends that if the losses associated with the 2011 return had not been considered, her total offense level would have been 15 rather than 17 and her sentencing range would have been reduced from 24-30 months to 18-24 months. That is incorrect. Defendant's total offense level of 17 resulted from a calculation that began with a base offense level of 18. (PSR at ¶18) A base offense level of 18 applies to tax losses between $200,000 and $400,000. USSG §§ 2T1.1 and 2T4.1 (tax table). Regardless of whether defendant's total tax loss was computed based on only 2009 and 2010 taxes owed ($228,060)

---

*attorneys, pressured him into accepting a "package deal" plea bargain, despite allegations that he was "'hounded, browbeaten and yelled at' by [his attorney] to accept the accept the plea . . . and that when [he] initially refused to acquiesce, [the attorney] called him 'stupid' and 'a fucking idiot,'" finding that "the thorough exchange between the court and [defendant] during administration of the Rule 11 protocol ... clearly demonstrates that [defendant] entered his plea willingly and voluntarily at the time he made it.").*

[7]*Defendant's attorney, Ms. Franklin, states, in an affidavit submitted with the government's response, that "[a]ll communications with Ms. Pillow Venable and as well as discovery (which contained an affidavit signed and initialed by Ms. Pillow Venable) indicated that Ms. Pillow Venable did possess the required mens rea required for her convictions for tax evasion. Doc. #26-1, p. 6. The court entered an order finding defendant waived the attorney-client privilege with respect to certain communications she had with her attorney. Doc. #25.*

8

or on 2009, 2010, and 2011 taxes owed ($342,192), it was still within the indicated loss range associated with level 18. Therefore, even if defendant's attorney should have objected to the court's consideration of losses associated with her 2011 taxes in computing the amount of tax loss, defendant was not prejudiced by the error.

As defendant has not established her ineffective assistance of counsel claim, she is not entitled to habeas relief on the basis of ground three.

Grounds One, Two and Four

The remaining grounds of defendant's habeas motion are procedurally barred. Defendant did not show cause for her procedural default or that a fundamental miscarriage of justice would result if her claims were not addressed. However, in addressing defendant's ineffective assistance of counsel claim, the court considered and rejected the merits of defendant's claim in ground one – that her guilty plea was unlawfully induced because she allegedly did not understand the nature of the charge.

Ground Two

Defendant also would not prevail on her claim in ground two, if it were considered on the merits. In ground two, defendant contends that the words "and restitution" were added to the plea petition without her knowledge and approval. She also alleges that she was not aware that restitution could be imposed by the court, was not informed by her attorney, when she met with her after sentencing, "that the full amount of $228,060.00 was also awarded" in restitution and did not know that she could be held responsible for the 75% fraud penalty. Doc. #20, p. 12.

9

Initially, defendant cannot challenge the restitution order by the present motion. A majority of circuits have held "that a federal prisoner cannot challenge the restitution portion of his sentence using 28 U.S.C. § 2255, because this statute affords relief only to prisoners claiming a right to be released from custody." United States v. Bernard, 351 F.3d 360, 361 (8th Cir. 2003). In an unpublished opinion, United States v. Satterfield, 218 Fed.Appx. 794, 796 (10th Cir. 2007), the Tenth Circuit also has concluded that federal courts lack subject matter jurisdiction over challenges to restitution orders because of the statutory language.

Insofar as defendant claims that she lacked knowledge before she pleaded guilty that she might be ordered to pay restitution, defendant does not allege that she would not have entered a plea if she had known that restitution could be imposed.[8] Defendant also ignores ¶20 of the petition to enter plea of guilty, which provided that restitution was a possible consequence of a guilty plea.[9] However, she was not advised during the plea hearing that she might be obligated to pay restitution, *see* Fed.R.Crim.P. 11(b)(1)(K), and the court will assume she did not otherwise know that restitution might be ordered. Defendant was, though, informed by the court during the change of plea hearing that she faced a maximum

---

[8]*The court has treated plaintiff's complaint regarding the addition of the words "and restitution" to the petition to enter plea of guilty as part of her argument that she was unaware that she could be required to pay restitution.*

[9]*Restitution also was discussed in the Presentence Investigation Report ¶¶13, 82-83 and defense counsel stated that "Ms. Pillow Venable was aware at the time of her plea that restitution may be a part of her sentence . . . ." Doc. #26-1, p. 6. Ms. Franklin stated in her affidavit that she had sent defendant a proposed plea agreement from the government, which indicated that the court would enter an order of restitution to the IRS in an amount of at least $141,788. Id. at p. 5 n.2.*

fine of $250,000 for each count.[10] The restitution amount of $228,060.00 is less than the amount that defendant might have been ordered to pay if the court had imposed the maximum fine of $250,000 for each violation of the statute to which defendant pleaded guilty. Therefore defendant "could not have been surprised or prejudiced by the imposition of a different authorized penalty." United States v. Fentress, 792 F.2d 461, 466 (4th Cir. 1986). The court's failure to inform defendant at the plea hearing that restitution might be imposed was harmless error in these circumstances. *See* Fed.R.Civ.P. 11(h); United States v. Gabriele, 24 F.3d 68, 71-72 (10th Cir. 1994) (district court's error in not warning defendant of a possible restitution order was harmless in situation when defendant knew he could be fined up to $750,000, but was ordered instead to pay $100,000 in restitution); Fentress, 792 F3d. at 466.

The court did not impose the 75% fraud penalty, which defendant also mentions in ground two. Doc. #20, p. 12; #20-3. Defendant cannot obtain, in this habeas proceeding, relief with respect to the tax penalty imposed by the IRS.

The claims in ground two of defendant's § 2255 motion are procedurally barred but, for the reasons stated, would fail even if considered on the merits.

Ground Four

Defendant's claim in ground four is procedurally barred, but it, too, would fail if considered on the merits. The court rejected defendant's assertion that her confession was

---

[10]*The possible fine also was referred to in the petition to enter plea of guilty. Doc. #7, p. 4.*

"obtained by coerced actions." *See supra* note 3. Even if it were somehow tainted, as defendant has not shown that her confession affected her guilty plea, conviction or her sentence, any irregularity or invalidity connected with it cannot form the basis for habeas relief. *See also* United States v. Salazar, 323 F.3d 852, 856 (10th Cir. 2003) ("'When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.'") (quoting Tollett v. Henderson, 411 U.S. 258, 267 (1973)); Wright, 43 F.3d at 494 (by accepting the prosecution's plea bargain, defendant was barred from raising any claim that the government breached its non-prosecution agreement with him in his § 2255 motion).

Defendant is not entitled to habeas relief on the basis of ground four of her motion.

Accordingly, defendant's § 2255 motion is **DENIED**. Defendant did not request an evidentiary hearing, but is not entitled to one, as a hearing is unnecessary to the determination of the issues she raised. *See* 28 U.S.C. § 2255(b) (prompt hearing required "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief"). A certificate of appealability also is **DENIED,** as the court concludes defendant has not made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

**IT IS SO ORDERED**.

Dated this 29th day of May, 2014.

JOE HEATON
UNITED STATES DISTRICT JUDGE